LOWY, J. (dissenting).
*205 A systemic flaw contributed to the tragic death of a young woman who was deprived of vital medication because her pharmacy was unable to obtain a prior authorization form from her prescribing physician as required by her insurer. In an understandable attempt to address this flaw, the court now imposes a nebulous duty on pharmacies to inform physicians that a prior authorization is required for certain medications in order to secure insurance coverage. This duty requires pharmacies to take "reasonable steps" to notify both the patient and the prescribing physician that a prior authorization is required each time the patient tries to fill the prescription, with no real guidance concerning what constitutes reasonable steps.
I agree with the court that pharmacists have a duty to take reasonable steps to notify patients of the need for prior authorization every time the patient tries to fill a prescription. I disagree, however, with the court's conclusion that pharmacists have a duty to notify the prescribing physician of the need for prior authorization every time the patient attempts to fill a prescription.
**703 Imposing such a duty is neither implied by contract, mandated by statute, nor-until today-recognized by common law.
The court's desire to improve patient safety and avoid the tragic results that occurred in this case is beyond question, but I am troubled that imposing a tepid duty on pharmacies that have no ability to control the system while simultaneously dissipating the personal responsibility of health insurers, physicians, and patients within the existing system will have an adverse effect on patient safety.
The pharmacy is not the entity that requires the prior authorization, nor does it have the legal authority to provide it. The pharmacy is a conduit because the pharmacy submits insurance claims for coverage. Nonetheless, the court's decision saddles pharmacies with the legal duty to inform physicians' offices that prior authorization is required. The rule announced today dissipates the legal accountability and personal responsibility of health insurers and physicians and gives patients a false sense of security, all while imposing a legal duty on an entity that may not actually be in the best position to help avoid the harms that occurred in this case.[1]
It appears that many pharmacies have attempted to fill this disconnect between the providers prescribing the medications and the insurance companies requiring the prior authorizations. I expect that this is good business practice and the right thing to do. The court's opinion, however, runs contrary to well-established principles of tort law because it imposes a legal duty on a party without the control or means to avoid the risk and resulting harm. A system that allows health insurers to detach themselves from both the patient and the provider, while fostering a false sense of security among patients, cannot be salvaged by requiring pharmacists to send a single facsimile message or leave a lone telephone message in potentially unmonitored voicemail at a health care provider's office.
Is leaving a voicemail message in the physician's answering service enough? How many telephone calls are enough?
*206 Will this duty evolve to require the pharmacy to confirm receipt of the **704 message? Will the pharmacist also have to inform the health insurer that the physician has yet to provide the prior authorization form? What must the pharmacist say to the patient who is without medication and awaiting the prior authorization? Will patients be lulled into a false sense of security and potentially dissuaded from following up with their physician to demand that the prior authorization be completed? Will every pharmacy in the Commonwealth, regardless of the resources available to them, need to create a document retention system to memorialize each attempt to notify a health care provider and to memorialize the nature of the health care provider's office's response? Will independent pharmacies be able to create such systems and remain in business? Will those pharmacies that implement the most thorough process and train their pharmacists to be assiduous and conscientious in seeking to obtain prior authorization expose themselves to enhanced liability when they fail to obtain prior authorization? Will the court's opinion enable physicians and health insurers to delegate a portion of their responsibilities to pharmacies to the detriment of patients? I respectfully dissent.

The prescribing physician also has a duty to provide the prior authorization when doing so is required by the standard of care. The duty imposed by the court may, in certain circumstances, blur that duty. Indeed, Carmen Correa argues that in addition to the negligence of Walgreen Eastern Co., Inc., and Dr. Andreas P. Schoeck, their combined negligence resulted in the prior authorization never being submitted to MassHealth.